## The Marian Bank v. Lawrence Voluck Associates, Inc.

*Walter Weis, Jr.*, for plaintiff.
*Paul R. Rosen*, for defendant.

SILVERSTEIN, *J.*, January 14, 1982—Plaintiff, The Marian Bank, obtained judgment in the amount of $91,515.49 against defendant, Lawrence Voluck Associates, Inc. Thereafter, plaintiff filed writs of execution and interrogatories in attachment against Spector, Cohen, Hunt & Rosen and Paul R. Rosen (attorneys), respondents, as garnishees. Respondents' answer to said interrogatories raises the claim of attorney-client privilege.

Plaintiff then moved the court for an order to

compel respondents to answer. By order dated May 30, 1980, this court ordered respondents to answer the interrogatories in attachment. It is from this order that respondents have appealed.

The law governing attorney-client privilege is contained in the Act of July 9, 1976, P.L. 586, §2, eff. June 27, 1978, 42 Pa.C.S.A. §5928, which provides:

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.'

Despite the seeming simplicity of the statute, we are, however, cognizant that the privilege is subject to limits and exceptions. It has been stated that the privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the court may require that the communication be disclosed: Cohen v. Jenkintown Cab Company, 238 Pa. Super. 456, 357 A. 2d 689 (1976). Also, it has been held repeatedly that when advice of counsel is sought in the assistance of the commission of a continuation of criminal or fraudulent activity, the privilege of the protection is lost: Nadler v. Warner Company, 321 Pa. 139, 184 At. 3 (1936); Com. v. Trolene, 263 Pa. Super. 303, 397 A. 2d 1200 (1979).

Thus, it is established that not every item of information obtained by an attorney from a client may be considered to be qualified for the protection of the privilege. The privilege applies to a communication, assuming it was conveyed in confidence to an attorney by a client in an attorney-client

relationship, only when the communication relates to a fact of which the attorney was informed for the purpose of securing either a legal opinion, legal services or assistance in some legal proceeding. It may not have been communicated for the purpose of committing a crime or tort and client must not have waived the privilege: Bird v. Penn Central Co., 61 F.R.D. 43 (E.D. Pa. 1973); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 294 F. Supp. 1148 (E.D. Pa. 1969), quoting from Judge Wyzanski's opinion in United States v. United Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), as follows:

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Thus, the mere assertion of the privilege does not make the privilege automatically applicable: McCormick on Evidence §91 (2nd ed. 1972); 8 Wigmore on Evidence §2311 (McNaughton rev. 1961). Each of the requirements, supra, must be satisfied before the privilege becomes applicable, and it is incumbent upon the party seeking to invoke the privilege to satisfy these standards. See United States v. Ponder, 475 F. 2d 37 (5th Cir.

1973); Goldinger v. Boron Oil Company, 60 F.R.D. 562, 565 (W.D. Pa. 1973); Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra. It is settled that the privilege is a narrow one and should be strictly construed against those who invoke it: Goldinger v. Boron Oil Company, supra; City of Philadelphia v. Westinghouse Electric Corp., 210 F. Supp. 483 (E.D. Pa. 1962); Automobile Banking Corp. v. Hadden, 40 D. & C. 2d 548 (1966).

It is of the very essence of the attorney-client privilege that it be limited to those communications which the client either expressly made confidential or which the client could reasonably assume under the circumstances would be understood by the attorney to be confidential: McCormick §91; 8 Wigmore §2311 ("the privilege assumes, of course, that the communications are made with the intention of confidentiality.") United States v. Ponder, supra. The mere relationship does not raise a presumption of confidentiality, and in order to be privileged, the circumstances must indicate that the communication was of a sort intended to be confidential. Id.

It is equally well-established that an attorney may be examined as to the existence of the relationship of the attorney and client: United States v. Ponder, supra; McCormick §90; 8 Wigmore §2313; 81 Am. Jur. 2d, Witnesses §212-214; Annot., 16 A.L.R. 3d 1047; Sargent v. Johns, 206 Pa. 386 (1903); Seip's Estate, 163 Pa. 423 (1894). Furthermore, an attorney may be examined as to his fee, the contract therefor, and the amount thereof, since such facts are considered to be matters within his own knowledge rather than confidential communications: United States v. Ponder, supra; 81 Am. Jur. 2d, Witnesses §215.

With all of these concepts in mind, we turn to the specific issue herein presented.

Interrogatories 1 through 6 merely seek to determine (1) whether respondent garnishees owe or owed defendant money or are or were liable to defendant; (2) whether the garnishees have or had property of defendant in their possession, custody or control; (3) whether the garnishees hold or held legal title to property of defendant; (4) whether the garnishees hold or held property of defendant in a fiduciary capacity; (5) whether defendant transferred or delivered property to the garnishees pursuant to the garnishees' direction and, if so, the consideration therefor, and (6) whether the garnishees transferred or delivered property to defendant, or discharged a claim against defendant pursuant to defendant's direction.

It is obvious that no claim of privilege is applicable to the information sought by interrogatories 1 through 6, for they do not seek to elicit the substance of any purported communication, but only whether or not certain events took place.

Interrogatories 7 through 9 seek information about the relationship and fee arrangements between the garnishees and defendant and as such, is not subject to the attorney-client privilege, supra.

It would be an intolerable obstruction of justice to permit, by asserting the attorney-client privilege, a defendant to exempt its property from execution by creditors by merely delivering it to his attorney and asserting the privilege. Thus, if property of a defendant has been transferred to his attorney, the privilege cannot be invoked to insulate information concerning such transaction. Such conduct, if permitted, would enable defendants to defraud their creditors.

A similar issue arose in General Tire Co. of Phila.,

Inc. v. Mulholland, 16 D. & C. 43 (1931), where plaintiff's interrogatories addressed to the attorney of defendant as garnishee, sought information regarding accounts receivable purportedly transferred to the attorney-garnishee from defendant. That court made it clear that attorneys must answer interrogatories concerning money or property of their clients in their possession, custody or control. The court made the following observation at page 44:

"In the case of Jeanes v. Fridenberg, 3 Clark 199, it was held that the position of the garnishee (attorney at law) was not well taken, and it was decided that unless satisfactory answer was made to the interrogatories, judgment would be entered against the garnishee. In that case Judge Sharswood, after discussing instances of privileged communications between attorney and client, stated: 'These are all cases in which the attorney is but a witness; but there is a class which stands upon a higher, and still clearer and more unequivocal ground, where the line is distinctly and broadly marked, and that is, where the attorney is himself a party to the transaction or agreement which he is called upon to disclose . . . If the privilege were suffered to be applied in such cases, a wide door would be opened for the successful perpetration of fraud and crime. Attorneys would be selected as the agents or trustees whereever a cover of darkness was needed.' "

The above reasoning is applicable to the instant matter. Accordingly, this court's order entered May 30, 1980 should be sustained.